1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEN MALDONADO, | Case No. 1:20-cv-01506-EPG |
| Plaintiff, | FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 1, 17). |
| Defendant. | |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for disability insurance benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 9).

Plaintiff argues that (1) The ALJ impermissibly rejected his subjective symptom testimony and (2) that the final adverse decision arises from an unconstitutional administrative process. (ECF No. 17, pp. 8, 19).

Having reviewed the record, administrative transcript, the briefs of the parties,[1] and the

---

[1] Plaintiff filed an opening brief on October 12, 2021, and Defendant filed an opposition brief on January

1

1    applicable law, the Court finds as follows:

2    **I.       ANALYSIS**

3            **A.       Plaintiff's Subjective Testimony**

4            Plaintiff first argues that the ALJ impermissibly rejected his subjective symptom

5    testimony. (ECF No. 17, p. 8). The Ninth Circuit has provided the following guidance regarding a

6    plaintiff's subjective complaints:

> Once the claimant produces medical evidence of an underlying impairment, the
> Commissioner may not discredit the claimant's testimony as to subjective
> symptoms merely because they are unsupported by objective evidence. *Bunnell v.
> Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v.
> Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to
> discredit excess pain testimony solely on the ground that it is not fully
> corroborated by objective medical findings"). Unless there is affirmative evidence
> showing that the claimant is malingering, the Commissioner's reasons for rejecting
> the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876
> F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ
> must identify what testimony is not credible and what evidence undermines the
> claimant's complaints.

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Additionally, an

ALJ's reasoning "must be supported by substantial evidence in the record as a whole." *Johnson v.

Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995). "Substantial evidence means such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion" and "[w]here the

evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that

must be upheld." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)

(citations omitted).

        Here, the ALJ concluded that Plaintiff's "medically determinable impairments could

reasonably be expected to cause the alleged symptoms." (A.R. 28). Accordingly, because there is

no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's

decision for clear and convincing reasons, supported by substantial evidence, for not giving full

weight to Plaintiff's symptom testimony.

        The ALJ summarized Plaintiff's subjective complaints and the reasons for discounting

---

11, 2022. (ECF Nos. 17, 21). Plaintiff did not file a reply brief.

them as follows:

The claimant was a forty-nine-year-old male on the application date who claimed bilateral plantar, left carpal tunnel, right internal epicondylitis, left arthroscopy, right knee injury and bilateral sciatica affects his ability to work. (Exhibit 1E/2) During the hearing, the claimant reported that he cannot work because of pain and problems in his feet, hands and sciatica, that he does not carry or lift, can only walk one block, can stand for a half hour and sit for a half hour before having to move due to pain. (Hearing Testimony) The claimant stated that he has not driven in ten years and that his medication does not help reduce his symptoms but that his sleep medication works well. (Hearing Testimony) The claimant reported a recent left wrist surgery for carpal tunnel syndrome [that] he reported did not help because his index finger still locks up and two other fingers continue to go numb. (Hearing Testimony) The claimant stated that he drops things with his left hand rarely and that he has carpal tunnel in his right hand. (Hearing Testimony) The claimant reported difficulty using pens, pencils, picking up change, has never used a computer keyboard and using eating utensils in his left hand. (Hearing Testimony) The claimant also reported that his bilateral foot surgery did not relieve his pain, that his right knee swells and burns, has similar problems with the left knee and has fallen, once every other month, because his knees give out. (Hearing Testimony) The claimant stated that his back pain is intermittent, but lasts for a day or two when present and that he has neck pain once a week that could last for months. (Hearing Testimony) The claimant reported that steroid injections and physical therapy has not helped with his pain. (Hearing Testimony) In March 2018, the claimant completed a Pain Questionnaire and within which reported being able to run errands like going to the Post Office or grocery store without assistance, can walk for three blocks, can stand for fifteen minutes, can sit for a half hour, uses public transportation and needs assistance to do yardwork. (Exhibit 3E)

. . . .

As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent for the following reasons. The claimant had mostly normal physical examination findings that included full strength, normal active range of motion, intact sensation and a normal gait and reflexes, with intermittent findings of painful bilateral heels and plantar arches, tenderness to the lower back, positive Tinel signs to the bilateral tarsal tunnels, carpal tunnel pain an abnormal gait, positive straight leg raises to the feet. (Exhibits 4F/1, 4, 6, 10, 16-17; 5F/2, 8; 10F/3, 7-8, 12-13, 18-19, 23-24, 27, 30-31; 13F/1, 11, 19-21, 23, 27-28, 32, 34, 36, 40, 42, 44, 47, 52, 55, 57, 65, 76, 78, 80, 83, 86, 88, 94, 96, 99, 101, 104-106) The claimant reported improved bilateral plantar arches and heel pain after surgery and the claimant had increased abilities, to include grip strength and exercise tolerance, during multiple physical therapy sessions. (Exhibits 6F; 9F; 13F/20, 52, 55) The claimant reported that he rarely drops things, rarely falls from problems with his knees, has only intermittent back and neck pain, can run errands like going to the Post Office or grocery shopping

1    independently and uses public transportation. (Exhibits 3E and Hearing
2    Testimony)

(AR 24-25, 28).

3    The first reason given to reject Plaintiff's subjective testimony is that it was inconsistent
4    with the medical record because Plaintiff "had mostly normal physical examination findings that
5    included full strength, normal active range of motion, intact sensation and a normal gait and
6    reflexes." (A.R. 28). Conflicts between a plaintiff's pain testimony and the medical record is a
7    clear and convincing basis to discount his testimony. *See Parra v. Astrue*, 481 F.3d 742, 750 (9th
8    Cir. 2007) (noting that inconsistencies between claimant's testimony and medical evidence was a
9    proper ground to discredit testimony). However, while it is true that Plaintiff had some normal
10   physical examination findings relating to his strength, range of motion, sensation, gait, and
11   reflexes, the ALJ failed to explain how any of these findings were inconsistent with Plaintiff's
12   testimony, which generally alleged disabling pain in his feet, hands, and back. Rather, review of
13   the records cited by the ALJ reveals that some normal findings were accompanied by notations
14   supporting Plaintiff's subjective testimony.

15   For example, Exhibit 10F/12-13 reports October 25, 2019 examination findings of normal
16   range of motion in some of Plaintiff's joints. (A.R. 474 (noting normal range of motion without
17   tenderness in proximal interphalangeal joint, metacarpal phalangeal joint, and mid carpal joint
18   among others)). However, this record also notes abnormal joint findings: "Carpal Metacarpal
19   Joint: Tender, Grinding, Right Thumb (1st) CMC, Tender, Grinding, Left Thumb (1st) CMC."[2]
20   (*Id.*). Further, this record assesses Plaintiff as having pain in both hands, pain in both wrists,
21   arthritis of carpometacarpal (CMC) joint in both thumbs, and carpal tunnel syndrome in both
22   wrists. (*Id.*). Perhaps most notably, this record documents that Plaintiff would be given bilateral
23   carpal tunnel injections and would later be receiving left carpal tunnel release surgery for his
24   symptoms. (A.R. 467 (noting follow up visit after carpal tunnel surgery) 472 (noting that bilateral

_____

[2] For readability, some alterations, such as omitting unnecessary spaces between periods, have been made
to quoted portions of the record without specifically indicating the changes.

carpal tunnel injections would be given)).

Other records reveal the same. For example, Exhibit 4F/1 documents that Plaintiff reported progressively worse bilateral foot pain. (A.R. 288). Exhibit 5F/2 reveals that Plaintiff had "substantial pain in his right knee" and that Plaintiff "may eventually require knee arthroplasty at least partial or total." (A.R. 314). Exhibit 13/11 notes some normal findings, such as "gait normal," but also notes Plaintiff's chief complaint as being "wrist pain." (A.R. 511-13). In short, while there were some normal findings in the medical records cited by the ALJ, those findings do not undermine Plaintiff's testimony in light of the other notations in the record that more directly relate to Plaintiff's subjective testimony and that tend to support that testimony. *Bess v. Saul*, No. 2:19-cv-01675 AC, 2020 WL 7769834, at *7 (E.D. Cal. Dec. 30, 2020) (concluding that ALJ decision was not supported by substantial evidence where "[t]he objectively normal findings do not address the fact that [P]laintiff has been primarily treated for chronic pain problems").

Similarly, the ALJ concluded that Plaintiff's subjective testimony was inconsistent with the medical evidence because the record showed "intermittent findings of painful bilateral heels and plantar arches, tenderness to the lower back, positive Tinel signs to the bilateral tarsal tunnels, carpal tunnel pain an abnormal gait, positive straight leg raises to the feet." (A.R. 23). Once again, the ALJ's conclusion ignores the record as a whole. True, the cited records do reveal that Plaintiff, at times, experienced mild symptoms or none at all. (*See, e.g.*, A.R. 293 (visit for bilateral heel pain but noting pain as 0 on scale of 1-10); 536 (noting no further heel pain); 544 (visit for bilateral heel pain noting pain as 2 on scale of 1-10)). However, the ALJ failed to explain how such intermittent symptoms are inconsistent with Plaintiff's testimony. Notably, Plaintiff did not claim that he suffered all his symptoms at all times throughout the relevant time period.[3] Rather, Plaintiff testified that some of the pain would disappear only to return later,

---

[3] The Court notes that Defendant's opposition references a pain questionnaire that Plaintiff filled out in March 2018 that stated that he experienced "moderate chronic pain" in his "knees, hands, back, and feet" and described the pain as "constant pain day and night." (ECF No. 21, p. 7 (citing A.R. 197)). However, because the ALJ did not cite any of Plaintiff's testimony as inconsistent with his questionnaire, the Court

lasting hours or months at a time. (A.R. 51). Such "[o]ccasional symptom-free periods . . . are not inconsistent with disability."[4] *Lester*, 81 F.3d at 833.

Next, the ALJ pointed to Plaintiff's reports of "improved bilateral plantar arches and heel pain after surgery" and his "increased abilities [regarding] grip strength and exercise tolerance, during multiple physical therapy sessions" as being inconsistent with Plaintiff's testimony. Plaintiff had surgery on both his feet in February 2019. (A.R. 554). Following the surgery, Plaintiff reported on February 26, 2019, that his "heel pain [was] completely resolved." (A.R. 552). While this record might appear inconsistent with Plaintiff's testimony that the pain in his feet (among other pain) prevented him from working, a closer review of the record as a whole prevents such a conclusion. (A.R. 43, 46-48 (Plaintiff's testimony about his foot pain)). Importantly, following Plaintiff's foot surgery he continued to report pain in his feet.

Notably, on February 26, 2019, Plaintiff reported his heel pain as resolved but that he experienced "other foot pain in other parts of his feet" that he believed could be "due to the boot." (A.R. 552). On March 26, 2019, Plaintiff reported "that his pain has since returned since the last visit" and "the pain is now in the arches of the feet and no longer in the heels." (A.R. 546). On May 28, 2019, there was "no improvement since [his] previous visit." (A.R. 538). On July 2, 2019, Plaintiff reported that "the tingling is improving but persistent" with "no further heel pain." (A.R. 536). On August 13, 2019, Plaintiff had "no further heel pain but [did] have pain to both his feet," with the record noting a "significant [history] of alcoholism." (A.R. 530). On September

---

is not free to consider the issue in the first instance. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). Moreover, this questionnaire cannot be viewed in isolation, as the record as a whole reasonably indicates that Plaintiff was experiencing constant pain at this time period, but that Plaintiff later suffered from intermittent pain. (*See* A.R. 51 (Plaintiff's testimony describing low back and neck pain as "com[ing] and go[ing]")).

[4] Although not an issue before the Court for decision, the Court notes that the ALJ likewise rejected medical opinions from Plaintiff's providers that generally supported Plaintiff's testimony because the ALJ deemed those opinions inconsistent with normal examination findings and intermittent findings of symptoms. (A.R. 29-30). On remand, the Court's above analysis may prove relevant in considering the medical source opinions.

17, 2019, Plaintiff presented "for bilateral foot pain due to alcoholic neuropathy" with the tingling improving with medication but not being "completely resolved." (A.R. 525). On October 29, 2019, Plaintiff continued to "have pain on a daily basis" and had not "been able to stop drinking." (A.R. 523). On January 14, 2020, Plaintiff followed up for "painful alcoholic neuropathy," reporting "painful feet." (A.R. 503).

Accordingly, even though surgery appeared to resolve Plaintiff's pain in the heels of his feet, the record shows that Plaintiff continued to experience other pain in his feet due to alcoholic neuropathy, which the ALJ apparently failed to consider in assessing the consistency of Plaintiff's subjective testimony. Moreover, as for the improvements in grip strength and exercise tolerance following physical therapy, the ALJ failed to explain how any such improvement was inconsistent with Plaintiff's pain testimony.

Lastly, the ALJ discounted Plaintiff's testimony because he "reported that he rarely drops things, rarely falls from problems with his knees, has only intermittent back and neck pain, can run errands like going to the Post Office or grocery shopping independently and uses public transportation." (A.R. 28). The ALJ failed to explain, and the Court fails to see, how Plaintiff's reports of only occasional instances of dropping items and falling from knee problems discounts any of his other testimony. Rather, such instances are generally consistent with Plaintiff's testimony about the severity of his symptoms. (*See* A.R. 46-47 (Plaintiff's testimony describing symptoms in hands and wrist, such as difficulty using a pen); 50 (Plaintiff's testimony stating that he falls about once every two months because his knees give out)). Likewise, the fact that Plaintiff can perform some daily activities, like grocery shopping and using public transportation, without any meaningful exploration by the ALJ of what such activities involve, is not inconsistent with any of Plaintiff's testimony nor does it suggest that such activities mean that Plaintiff is capable of work. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("In addition, activities such as walking in the mall and swimming are not necessarily transferable to the work setting with regard to the impact of pain. A patient may do these activities despite pain for

therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved."); *see Davis v. Colvin*, No. 14-CV-04237 NC, 2015 WL 12697628, at *4 (N.D. Cal. June 30, 2015) ("To be sure, the ALJ does state that the inconsistencies with daily living activities 'include being independent for activities of daily living and going on vacations.' But as explained above, these types of conclusory statements fail to satisfy both the 'clear and convincing' standard as well as the 'specific and legitimate reasons' standard.").

Accordingly, the Court concludes that the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

### B.     Unconstitutional Administrative Process

Plaintiff next argues that, because the ALJ derived its authority to hear the claim from an unconstitutional delegation of authority, the Court should vacate and remand. (ECF No. 17, p. 19). Plaintiff states that Andrew Saul held the office of Commissioner of Social Security as the sole person dischargeable only for cause between June 17, 2019, and July 9, 2021, when President Biden terminated him. *See* 42 U.S.C. § 902(a)(3) ("An individual serving in the office of Commissioner may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office."). The United States Supreme Court held in *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020) that it is unconstitutional for an executive agency to be led by a single member-head, who serves for a longer term than the president, and who can only be removed from the position for cause.  *Id.* at 2204; *see also Collins v. Yellen,* __ U.S. __, 141 S.Ct. 1761, 1770 (2021) (concluding that Federal Housing Finance Agency's structure violates the separation-of-powers doctrine).  Additionally, the Office of Legal Counsel has issued an opinion that casts significant doubt on the constitutionality of the appointment of the Commissioner of Social Security. Office of Legal Counsel, *Constitutionality of the Commissioner of Social Security's Tenure Protection*, 2021 WL 2981542 (July 8, 2021).

1    Here, the ALJ heard the claims at a hearing on February 19, 2020, and issued a decision

2    on March 30, 2020. The Appeals Council denied review on August 26, 2020. Thus, the relevant

3    agency actions were all completed within the potentially unconstitutional tenure of Commissioner

4    Saul.  Because the agency's actions were completed under unconstitutional authority, Plaintiff

5    claims that these actions were constitutionally defective. Accordingly, Plaintiff requests a new

6    hearing and administrative decision.

7    Defendant agrees that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent

8    it is construed as limiting the President's authority to remove the Commissioner without cause.

9    (ECF No. 21, p. 19). However, Defendant argues that this alone does not justify a remand.

10    Instead, a party seeking remand must show that the restriction on removal authority actually

11    caused him harm. (*Id.* (citing *Collins,* 141 S. Ct. at 1787-89)). Here, Plaintiff cannot do so

12    because (1) the ALJ in this case had his appointment ratified by an Acting Commissioner of

13    Social Security whom the President could have removed at will at any time; and (2) the removal

14    restriction did not affect the determination of Plaintiff's claim.  Defendant also argues that various

15    other legal doctrines including harmless error, de facto officer, and the rule of necessity, as well

16    as prudential considerations caution against remand here. Defendant also cites a number of

17    district court cases that have refused to set aside unfavorable disability benefits decisions based

18    on the statutory restriction on removal of the Commissioner. (ECF No. 21, p. 25 n.5) (citing

19    among other cases*, Carolyn M. D. v. Kijakazi*, No. 2:20-CV-06725-AFM, 2021 WL 6135322, at

20    *10-12 (C.D. Cal. Dec. 28, 2021)).

21    As an initial matter, Plaintiff "concedes that ALJ Millington was properly appointed by

22    the Acting or Deputy Commissioner Berryhill." (ECF No. 17, p. 24). Thus, there is no reason to

23    void the actions by the ALJ. *See Collins,* 141 S. Ct. at 1787 ("All the officers who headed the

24    FHFA during the time in question were properly *appointed*. Although the statute

25    unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was

26    no constitutional defect in the statutorily prescribed method of appointment to that office. As a

27    result, there is no reason to regard any of the actions taken by the FHFA in relation to the third

28    amendment as void.").

As to whether Plaintiff is nevertheless entitled to retrospective relief, the Court looks to the following guidance from the Supreme Court in *Collins*:

> That does not necessarily mean, however, that the shareholders have no entitlement to retrospective relief. Although an unconstitutional provision is never really part of the body of governing law (because the Constitution automatically displaces any conflicting statutory provision from the moment of the provision's enactment), it is still possible for an unconstitutional provision to inflict compensable harm. And the possibility that the unconstitutional restriction on the President's power to remove a Director of the FHFA could have such an effect cannot be ruled out. Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way. In those situations, the statutory provision would clearly cause harm.

*Id.* 1788–1789.

Here, Plaintiff has not shown any connection between the denial of benefits and the unconstitutional removal provision. Accordingly, remand is not warranted. *See Frank W. v. Kijakazi,* 2021 WL 5505883, at *4 (S.D. Cal. Nov. 24, 2021) ("Here, there is no allegation even suggesting a direct nexus between the adjudication of plaintiff's disability claim by the SSA and the alleged separation of powers violation in the removal statute that applies to the Commissioner."); *Shaun A. v. Commissioner of Social Security,* 2021 WL 5446878, at *6 (W.D. Wash. Nov. 22, 2021) ("Plaintiff cannot show any connection between the unconstitutional limit on Commissioner Saul's removal and the ALJ's decision denying him benefits.").

Plaintiff argues that he has established sufficient harm based on President Biden's apparent delay in terminating Commissioner Saul combined with a White House statement at the termination criticizing Commissioner Saul for politicizing social security benefits and reducing due process protections for appeals hearings. (ECF No. 17, at pp. 24-26). However, Plaintiff has not pointed to any specific lack of due process in his administrative proceedings and thus any alleged harm remains speculative.

\\\

\\\

10

### C.   REMEDY

Plaintiff concludes by stating that this case should be remanded for payment of benefits or alternatively for further proceedings. (ECF No. 17, p. 18). Defendant argues that, if this Court overturns the ALJ's decision, the Court should remand for further administrative proceedings. (ECF No. 21, p. 36).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-step test, with each of the following parts of the test needing to be satisfied to remand for benefits: the first step considers whether the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony; the second step looks to "whether further administrative proceedings would be useful," which considers, among other things, whether there are gaps, conflicting evidence, and ambiguities in the record as a whole that must be resolved; and the third step evaluates whether the testimony, if credited as true, would leave not the slightest uncertainty as to Plaintiff's disability. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100-01 (9th Cir. 2014). Notably, remand for further proceedings is the "ordinary" requirement whereas a remand for payment of benefits is the rare exception. *Id.* at 1101. And even if all parts of the test are met, the Court may still exercise its "discretion to remand for further proceedings, rather than for benefits." *Id.* at 1102.

Here, the first step is satisfied because, as discussed above, the ALJ failed to provide clear and convincing reasons to discount Plaintiff's subjective testimony. However, the second and third steps are not met. Notably, although Plaintiff asserts that the record is free from conflicts and ambiguity and that Plaintiff would be considered disabled if his testimony were credited as true, Plaintiff offers no developed argument on this point. Rather, the intermittent reports of symptoms, conflicting findings from physicians regarding Plaintiff's ability to work, and the lack of clear vocational expert testimony regarding Plaintiff's subjective symptom testimony all provide reason to doubt disability and such issues need to be addressed through administrative proceedings. (*See, e.g.*, A.R. 58-61, 79-89, 462, 538, 546). Given these circumstances, the Court

concludes that remand for further proceedings is warranted.

II.      **CONCLUSION AND ORDER**

Accordingly, the decision of the Commissioner of the Social Security Administration is REVERSED and REMANDED for further administrative proceedings consistent with this decision. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant.

IT IS SO ORDERED.

Dated:   **April 18, 2022**                    /s/ _Erica P. Grosjean_
                                                      UNITED STATES MAGISTRATE JUDGE

12